STATE OF NORTH CAROLINA v. DAVID HAMILTON

No. 7213SC667

(Filed 25 October 1972)

1. **Criminal Law §§ 53, 73— opinion evidence on cause of death — inadmissible as hearsay**

In a prosecution for second degree murder or manslaughter, testimony of an expert witness as to his opinion of cause of death was inadmissible as hearsay evidence where such opinion was based in part on something told him outside of court by the physician treating deceased at the time of his death.

2. **Death § 1— proof of cause of death**

A death certificate, when certified by the State Registrar, is *prima facie* evidence of the cause of death. G.S. 130-66.

APPEAL by defendant from *Bailey, Judge,* April 1972 Session, BLADEN Superior Court.

Defendant was tried under a bill of indictment charging him with first-degree murder of Burris Ludlum. On the call of the case for trial the State announced that the defendant would be tried for murder in the second degree or manslaughter as the evidence might justify. The defendant entered a plea of not guilty and the jury returned a verdict of guilty of. manslaughter. From the imposition of a prison sentence of 20 years, defendant appealed.

The victim and defendant were neighbors. The defendant lived on a dirt road which ran beside the victim's home. The victim's daughter, Eleanora Ludlum, lived near the end of the dirt road beyond where the defendant lived.

On 21 January 1972, the defendant was working on an automobile which had been burned. The work was going on at a place some 30 feet from the trailer where Eleanora Ludlum lived. The victim, Burris Ludlum, walked down the dirt road to Eleanora's home, talked with her for a few minutes, and then returned along the dirt road within 15 or 20 feet of the defendant. The defendant and the deceased carried on a conversation in which they cursed each other and the defendant accused the deceased of being the person who had previously burned the automobile he was working on. During the course of the verbal altercation, the defendant took a pistol from his pocket and shot three times. One of the bullets struck the deceased Ludlum in the abdomen.

The deceased was taken to the Bladen County Hospital where he was examined and treated by Dr. Ralph F. Meinhardt until 26 January 1972. During this time the deceased responded well to treatment. From 27 January 1972 until his death on 30 January 1972, the deceased was treated by Dr. A. F. Pumphrey who was the partner of Dr. Meinhardt. The death certificate was signed by Dr. Pumphrey.

Over objection the trial court permitted testimony that the cause of death as stated in the death certificate and as given by opinion of Dr. Meinhardt, was pneumonia as a consequence of peritonitis, which was due to a gunshot wound of the abdomen.

*Attorney General Robert Morgan by Deputy Attorney General Andrew A. Vanore, Jr., for the State.*

*Moore & Melvin by Reuben L. Moore, Jr., for defendant appellant.*

CAMPBELL, Judge.

The defendant assigns as error the admission of the death certificate and the admission of the testimony of Dr. Meinhardt as to the cause of death.

[1] Dr. Meinhardt testified as to his education and training in the medical field of surgery. There was no finding by the court that he was an expert, but the record would establish this. Dr. Meinhardt, over objection, testified that "As outlined in the Death Certificate, I feel that his death was due to the gunshot wound complicated by peritonitis and pneumonia." Likewise, over objection, Dr. Meinhardt testified, "This death certificate bears the name of my partner, Dr. A. F. Pumphrey. This was filled out with Dr. Pumphrey and I in consultation."

On cross-examination Dr. Meinhardt testified that he had no knowledge of any post-mortem examination of the deceased. He further testified:

"Q. Doctor, can you state to a medical certainty that the cause of death as stated in the death certificate, that is, pneumonia, was directly related to peritonitis on the basis of any examination that you made?

A. Well, as I stated, I did not attend him the last three or four days of his life, but after consulting with Dr. Pumphrey, it is our opinion that the pneumonia was secondary to the peritonitis which was secondary to the gunshot wound."

It is obvious that the opinion of Dr. Meinhardt as to the cause of death was based, at least in part, upon what he learned from his partner, Dr. Pumphrey. Dr. Pumphrey himself did not testify and thus the testimony of Dr. Meinhardt is based upon hearsay.

In the case of *State v. David*, 222 N.C. 242, 22 S.E. 2d 633 (1942), it is stated:

"There are two avenues through which expert opinion evidence may be presented to the jury: (a) Through testimony of the witness based on his personal knowledge or observation; and (b) through testimony of the witness based on a hypothetical question addressed to him, in which the pertinent facts are assumed to be true, or rather, assumed to be so found by the jury. That an expert witness may base his opinion partly on facts of his own observation and partly on factual (as opposed to opinion) evidence of other witnesses, hypothetically presented, is, of course, within the rule.

It is clear that if in his testimony Dr. Taylor had reference to information concerning the Forbus finding obtained extrajudicially—that is, in any other manner than from the evidence given in court—the testimony is objectionable as based on a hearsay statement. If it had reference to the testimony of Dr. Forbus which immediately preceded his own, it is equally objectionable because it was not hypothetically presented—that is, was not predicated on an assumption that the jury should find the purported facts in the Forbus statement to be true. *Dempster v. Fite,* 203 N.C., 697, 167 S.E., 33; *Summerlin v. R.R.,* 133 N.C., 551, 45 S.E., 898; *Martin v. Hanes Co.,* 189 N.C., 644, 646, 127 S.E., 688; *Yates v. Chair Co.,* 211 N.C., 200, 189 S.E., 500.

Our practice and procedure does not permit an expert witness to sit in, overhear the evidence and give the jury his opinion or conclusions thereupon, without regard to what might be the attitude of the jury toward the credibility and weight of the evidence with which the witness is dealing and upon which his opinion is based. The assumption of its truth in the mind of the witness, however self-satisfying, cannot be substituted for the finding of the jury, and necessarily invades the province of the jury. It invades the province of the jury not because it gives an opinion as to the ultimate facts to be found by the jury, which is sometimes permissible, but because it permits the witness to determine for himself the weight and credibility of the evidence of these facts, which ought always to be left to the jury. . . . "

In that case it was held incompetent and a new trial given where Dr. Taylor, an expert witness, based his opinion in part on what Dr. Forbus, another expert witness, had already testified to. In the instant case Dr. Meinhardt based his opinion in part on something Dr. Pumphrey had told him outside of court.

It is also noted that Dr. Meinhardt was called upon to express an opinion as to the cause of death based upon what was stated in the death certificate. At that time the death certificate had not been introduced into evidence. Since the death certificate had not been signed by Dr. Meinhardt and it was not in evidence, the introduction of this testimony was improper.

[2] A purported death certificate was subsequently introduced into evidence as State's Exhibit No. 5. At the time this exhibit was introduced, no objection was made to it as shown by the record. We note, however, that the purported death certificate was certified to as a true and correct copy by the Register of Deeds of Bladen County, and it does not appear to have been certified by the State Registrar. G.S. 130-66 provides that the State Registrar is authorized to certify copies of death certificates and a reproduction of the original records on file in the office of the State Registrar "when certified by him, shall be considered for all purposes the same as the original and shall be prima facie evidence of the facts therein stated."

In *Branch v. Dempsey*, 265 N.C. 733, 145 S.E. 2d 395 (1965), in reference to a similar statute, G.S. 130-73 (now recodified as G.S. 130-66(b)), it is stated, "The purpose of the statute appears to be to permit the death certificate to be introduced as evidence of the fact of death, the time and place where it occurred, the identity of the deceased, the bodily injury or disease which was the cause of death, the disposition of the body and possibly other matters relating to the death." In view of this, the death certificate, when properly certified, would be prima facie evidence of the cause of death.

As pointed out above, the evidence of Dr. Meinhardt in which he expressed his opinion as to the cause of death based upon his consultation with Dr. Pumphrey was error, and the defendant is entitled to a new trial.

New trial.

Judges MORRIS and PARKER concur.